■ ECLAIR ADVISOR LTD., as Trustee of DAEWOO INTERNATIONAL (AMERICA) CORP. TRUST, Appellant-Respondent, v JINDO AMERICA, INC., Respondent-Appellant. [833 NYS2d 440]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered March 17, 2005, which, inter alia, granted the motion by defendant Jindo America, Inc. for summary judgment dismissing the complaint unless plaintiff joins certain parties as defendants in this matter and denied plaintiff's cross motion for summary judgment, unanimously modified, on the law and the facts, to the extent of denying the motion of defendant Jindo America, Inc. for summary judgment and vacating the directive for mandatory joinder, and otherwise affirmed, without costs.

This action was instituted by Daewoo International (America) Corp. (Daewoo America), a New York corporation, in December of 1999 to recover payments in the total amount of more than $46 million allegedly owed to it on 22 outstanding invoices for shipping containers that it had sold to defendant Jindo America, Inc., another New York corporation. However, Daewoo America subsequently filed for bankruptcy and the matter was stayed until October of 2001, by which point Cove Capital had been designated the substitute plaintiff, as trustee for Daewoo America, and in July of 2004, Eclair Advisor Ltd. became the substituted plaintiff.[1] Specifically, Daewoo America was a subsidiary of Daewoo Corporation (Daewoo Korea), an entity based in Seoul, Korea, which was a large exporter of both general and consumer goods, whereas Jindo Corporation (Jindo Korea), a leading manufacturer of seagoing containers also based in Seoul, Korea, utilized the export-import credit facilities of Daewoo Korea in connection with the sale and distribution of its containers to third parties.

In any event, between early 1996 and mid-1999, Daewoo America agreed to deliver and sell shipping containers to Jindo America. This arrangement was effected under two-party agreements between themselves and, beginning in 1996, pursuant to so-called Four-Party Agreements between Daewoo Korea, Daewoo America, Jindo Korea and Jindo America. Under these agreements, Jindo Korea exported its shipping containers, through Daewoo Korea to Daewoo America and ultimately to

---

1. Nevertheless, all references herein to plaintiff will mean Daewoo America, the entity which commenced the present litigation.

Jindo America. The rationale for these agreements was apparently to provide Jindo Korea with improved export financing from Daewoo Korea and Daewoo America, while, at the same time, enhancing Daewoo Korea's export revenue and sales profits. Nonetheless, in May of 2001, Jindo Korea entered into bankruptcy reorganization proceedings in the District Court of Seoul, Korea, and Daewoo Korea thereupon filed a claim in that proceeding for more than $36 million, the amount due under the Four-Party Agreements. A reorganization plan was ultimately approved, and some payment was made to Jindo Korea's creditors.

Jindo America then moved to dismiss the New York action, arguing, in part, that Jindo Korea and Daewoo Korea, the corporate parents of the litigants herein, were integral parties to this lawsuit. Furthermore, the bankruptcy reorganization proceedings in the Seoul District Court had a binding preclusive effect upon Daewoo America's claims in this matter. Jindo America also moved to dismiss on the ground of the forum selection clause in the Four-Party Agreement(s), as well as forum non conveniens. By order dated September 26, 2002, the motion court denied dismissal, explaining that "the outcome of this motion is entirely dependent upon whether or not the Four-Party Agreement itself is controlling in this matter. Jindo America has failed to definitively demonstrate either that the current suit is governed by the Four-Party Agreement, or, if it is, that the forum selection clause contained therein is exclusive or mandatory." Although the court acknowledged that "the documentary evidence submitted by Jindo America does offer an alternative perspective to the underlying issues in this case, it does not flatly contradict Daewoo America's factual claims," and, therefore, Jindo America has failed to resolve all factual issues as a matter of law and conclusively dispose of Daewoo America's claim.

Thereafter, discovery took place, and in April of 2004, Jindo America moved for summary judgment dismissal of the complaint, asserting, inter alia, payment, release, res judicata, collateral estoppel and forum non conveniens. Plaintiff then cross-moved for summary judgment in its favor on its claims for goods sold and delivered, account stated, unjust enrichment and partial payment. In the order being appealed herein, the court below denied Daewoo America's cross motion, dismissed its third and fourth causes of action for, respectively, unjust enrichment and quantum meruit and granted Jindo America's motion to the extent of affording it dismissal unless plaintiff timely joins Jindo Korea and Daewoo Korea as defendants herein. In

that regard, the court pointed out that while "[p]laintiff describes the purchase of shipping containers by Jindo America from Daewoo America in 1996-1999 as a transaction between the two companies," whereby after "each shipment of goods, Daewoo America invoiced Jindo America for payment," and "Jindo America paid Daewoo America," defendant "views the same transactions as an implementation of [the] 1996, 1997 and subsequent Four-Party Agreements."

The court further observed that if Jindo America "is correct, and the Four-Party Agreements apply to this action, then the Korean parents are indispensable parties, and all other issues are contingent on these agreements as well,"[2] and Jindo America had clearly "been prejudiced by the absence of Daewoo Korea as a party in the course of discovery, when plaintiff refused to produce officers of Daewoo Korea for depositions or to produce its Korean documents. The absence of Daewoo Korea in particular has robbed defendant of the necessary discovery to support its defense that the debt was paid in full pursuant to the Jindo Korea bankruptcy workout plan." Dismissal was, thus, "conditionally granted without prejudice, allowing time for Daewoo Korea and Jindo Korea to be brought in." Nonetheless, the court declined to dismiss this matter for reason of forum non conveniens inasmuch as "two of the four parties are New York corporations," and "not all of the other contacts are in Korea."

The court below also refused to dismiss the complaint because of the forum selection clause contained in the Four-Party Agreement(s), explaining that not only do the parties disagree as to whether such clause is permissive or mandatory but as recognized by "defendant's own expert, Won Hyun Choi, the clause does not contain the traditional Korean words that would unambiguously establish that Seoul District Court was meant to have exclusive jurisdiction over all disputes arising out of the Four-Party Agreement."

The court stated, "the dispositive issue is whether Jindo Korea compensated Daewoo for Jindo America's debt in full," and under the bankruptcy reorganization plan, "Daewoo Korea was to receive 10% of Jindo America's alleged debt in cash and 90% in equity swap. Both plaintiff and defendant admit that Daewoo

---

**2.** Indeed, the court found that the subject agreements were applicable herein since they had been executed by all four parties, thus precluding "recovery under a quasi-contract theory for events arising out of the same subject matter" and requiring dismissal of plaintiff's third and fourth claims for unjust enrichment and quantum meruit. Plaintiff does not now challenge the dismissal of its third and fourth causes of action.

Korea is entitled to Jindo Korea's shares. However, defendant asserts that these shares cover the remaining 90% of the debt while plaintiff claims that, together with cash, they represent only a small part of what is due to Daewoo America."

The court found that inasmuch as it was "unable to determine whether the Korean bankruptcy judgment precludes this action or whether Daewoo America is collaterally estopped by the Korean bankruptcy action from relitigating whether Jindo America is indebted to Daewoo America," the "consequences for the parties of the order of the Seoul District Court should be established at trial."

Plaintiff challenges the motion court's conclusion that Daewoo Korea and Jindo Korea are necessary parties to this action, contending that complete relief can be afforded against one co-obligor without having other co-obligors join in the litigation but that, at any rate, if defendant is convinced that Daewoo Korea and Jindo Korea are indispensable to this matter, the court should have required Jindo America to implead the Korean entities.

We agree, and for the reasons that follow we modify the order by striking that portion requiring Daewoo America to join Daewoo Korea and Jindo Korea as necessary parties.

Pursuant to CPLR 1001 (a) "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants," but, as provided under subdivision (b) thereof, when a necessary party "has not been made a party and is subject to the jurisdiction of the court, the court shall order him summoned. If jurisdiction over him can be obtained only by his consent or appearance, the court, when justice requires, may allow the action to proceed without his being made a party. In determining whether to allow the action to proceed, the court shall consider: (1) whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder; (2) the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined; (3) whether and by whom prejudice might have been avoided or may in the future be avoided; (4) the feasibility of a protective provision by order of the court or in the judgment; and (5) whether an effective judgment may be rendered in the absence of the person who is not joined."

The Court of Appeals has made plain that "[j]oinder rules serve an important policy interest in guaranteeing that absent parties at risk of prejudice will not be 'embarrassed by judg-

ments purporting to bind their rights or interests where they have had no opportunity to be heard,' " and they "also protect against multiple lawsuits and inconsistent judgments" (*Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals*, 5 NY3d 452, 458 [2005], quoting *First Natl. Bank of Amsterdam v Shuler*, 153 NY 163, 170 [1897]; *see also Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 820 [2003] ["(t)here are two principal purposes of requiring dismissal owing to the absence of an indispensable party. First, mandatory joinder prevents multiple, inconsistent judgments relating to the same controversy. Second, joinder protects the otherwise absent parties who would be 'embarrassed by judgments purporting to bind their rights or interests where they have had no opportunity to be heard' "] quoting *First Natl. Bank of Amsterdam, supra*). Yet, notwithstanding that, whenever possible, "the joinder provision is to be employed to avoid dismissal," and "a court, then, must use every effort to join a necessary party," there "are situations when such a party may be beyond the reach of the court" (*Matter of Red Hook/Gowanus Chamber of Commerce*, 5 NY3d at 459).

Consequently, "[w]hen a necessary party can be joined only by consent or appearance, a court must engage in the CPLR 1001 (b) analysis to determine whether to allow the case to proceed without that party. Though CPLR 1001 (b) protects the absent party who might be inequitably affected by a judgment in the action, it also treats dismissal for failure to join a necessary party as a last resort," and "under the statute a court has the discretion to allow a case to continue in the absence of a party, as justice requires," but "[t]o assist in reaching this decision, the Legislature has set forth five factors a court must consider. Of those five factors, no single one is determinative; and while the court need not separately set forth its reasoning as to each factor, the statute directs it to consider all five" (*id.*).

Although it would seem that jurisdiction over Daewoo Korea and Jindo Korea can be procured only by their consent or appearance, there is no indication that the motion court actually considered the five factors prescribed in CPLR 1001 (b). Indeed, the court failed to describe how Jindo America is prejudiced by the absence of its parent company, Jindo Korea. Jindo America produced both documents and affidavits from Jindo Korea in the course of discovery and motion practice. Moreover, Jindo Korea witnesses were the basis for the vast majority of Jindo America's submissions. Furthermore, the record discloses, and the court recognized, that Daewoo America fully complied with all of Jindo America's discovery demands for documents from

Daewoo Korea and agreed to produce witnesses from Daewoo Korea for examinations before trial.

Should Jindo America believe that the Korean companies are indispensable to protect its own interests, Jindo America has the option of seeking to implead them.

The denial of summary judgment to plaintiff should be affirmed because there are questions of fact concerning whether or not Jindo Korea was merely a guarantor under the Four-Party Agreement or rather a co-obligor of Jindo America's debts to Daewoo America. Concur—Marlow, J.P., Nardelli, Catterson and McGuire, JJ.