OPINION OF THE COURT
Lucy Billings, J.
Petitioners claim respondents violated their labor union constitution’s express terms by accepting respondent Fathi’s election as the union president, when he had been convicted of possession of stolen property and repeatedly of attempted petit larceny. The court previously entered a series of orders requiring timely hearings at each level of internal union appeals. In a decision dated August 23, 2010, the parent union judicial panel ultimately upheld Fathi’s election, concurring with the decision of the panel’s hearing officer, and concluding as follows.
1. Fathi’s prior convictions, all misdemeanors and at least 25 years old, “were relatively minor and have no direct relationship to the duties and responsibilities of his position with the union.”
2. A strict construction of the union constitution imposing a lifetime ban on serving in union office due to a misdemeanor 25 years ago would be unfair and inconsistent with trade union principles. (Aff of Behrouz Fathi, exhibit J at 4.) Respondents define trade union principles as including values of liberty, human dignity, opportunity, equal rights, and justice.
Respondents move to dismiss the amended petition for failure to state a claim (CPLR 3211 [a] [7]) based on the union judicial *885 panel’s conclusions and on the ground that enjoining Fathi from serving as president would violate Correction Law § 752’s prohibition of discrimination in employment against persons with a criminal record. The panel’s hearing officer also referred to this anti-discrimination provision, but premised his decision on a rejection of the union constitution’s “literal” interpretation, instead interpreting its prohibition against holding union office as intended to apply only to “serious” offenses “closely related to the duties of the union office.” (Fathi aff, exhibit I at 7.)
Recognizing the court’s constraints against intruding on internal union affairs, petitioners maintain that, since the issues regarding the union constitution involve only its enforcement, not its interpretation, enforcement by the court will not intrude on union affairs. Because the constitutional prohibition is clear, it is not subject to interpretation in light of ascertained intent. Fathi’s convictions, moreover, committed well into his adulthood, are related to the duties of his union office. Regarding Correction Law § 752, petitioners maintain that it is the court’s function, not the union’s, to interpret the statute, which does not apply to the office of union president. (See CPLR 7803 [3].)
Respondents further move to dismiss the amended petition for failure to join necessary parties District Council 37 of the American Federation of State, County and Municipal Employees (AFSCME), with which the parties’ local union is affiliated, and AFSCME, by which their local union is chartered. (CPLR 3211 [a] [10].) Officials of these affiliated and parent unions heard and determined petitioners’ internal union appeals. The amended petition challenges the AFSCME judicial panel’s final determination of these appeals.
I. Factual Background
A. Union Structure and Constitutional Governance
The Civil Service Technical Guild, Local 375, comprising approximately 8,000 members, is one of many local unions affiliated with and included in District Council 37 of AFSCME and is chartered by AFSCME, an international union. (Commer v McEntee, 145 F Supp 2d 333, 335 [SD NY 2001].) Local 375’s president handles an annual budget of more than $4,000,000 and a treasury of up to $1,000,000 in assets.
District Council 37 is AFSCME’s regional governing body. District Council 37’s constitution governs Local 375. AFSCME’s constitution further requires that Local 375 be governed in ac *886 cordance with the AFSCME constitution. (See Felton v Ullman, 629 F Supp 251, 253 [SD NY 1986].)
The District Council 37 constitution, article XIII, § 7, proscribes that “[u]nless otherwise provided for in applicable law, no person who has been convicted of . . . any crime of dishonesty . . . shall serve as an officer or managerial employee of the council.” (Fathi aff, exhibit A at 19.) The “council” includes “all local unions affiliated with the council.” (District Council 37 const, art XIII, § 1; id. at 18.) Aside from the opening deference to other applicable law, nothing else in the text of either the District Council 37 constitution or the AFSCME constitution qualifies this prohibition as limited specifically by Correction Law § 752, or by the conviction’s relevance or temporal proximity to the office or managerial position, or by trade union principles.
B. Fathi’s Employment Status
Fathi attests that he is “on release” from his employment by the New York City Transit Authority, and Local 375’s executive committee has employed him full time as union president. (Fathi aff 1i 2.) Petitioners point out that during the months leading up to Fathi’s election as president he was employed by the Transit Authority, not Local 375, and performed his union work during release time paid by the Transit Authority. After being elected president, Fathi transferred himself to the Local 375 payroll. The parties acknowledge that nothing in the applicable union constitutions authorizes Local 375’s employment of any union officer.
II. Application of the Union’s Constitutional Guarantees
Union constitutional provisions authorizing limitations on membership, such as expulsion or suspension from membership, suspension from meetings, voting, or nominating candidates, or a ban on holding office, based on members’ misconduct are commonplace, are regularly enforced, and do not threaten union democracy, unfairly suppress viewpoints, or unduly burden members. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d 101, 102-103, 105, 107 [2d Cir 2004]; Commer v McEntee, 145 F Supp 2d at 336.) The only constraint is that the member be afforded adequate notice of the reasons for the limitation and opportunity to defend against the charges and penalty. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 105.) Respondents do not dispute that Fathi received adequate notice of petitioners’ charges and opportunity to defend against them.
*887 The AFSCME judicial panel’s interpretation of AFSCME District Council 37’s constitution, specifically article XIII, § 7, “is entitled to great deference” (Sim v New York Mailers’ Union No. 6, 166 F3d 465, 470 [2d Cir 1999]), “unless that interpretation is patently unreasonable” or implausible. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 106; White v White Rose Food, a Div. of DiGiorgio Corp., 237 F3d 174, 182 n 10 [2d Cir 2001]; Commer v McEntee, 145 F Supp 2d at 340.) The court must be similarly cautious of involvement in union elections and internal disputes over union leadership. (Commer v McEntee, 145 F Supp 2d at 335, 338; Craig v Boudrot, 40 F Supp 2d 494, 500 [SD NY 1999]; Mason Tenders Local Union 59 v Laborers’ Intl. Union of N. Am., 924 F Supp 528, 543 [SD NY 1996]; Felton v Ullman, 629 F Supp at 254.) Caution, however, is “not synonymous with . . . paralysis.” (Craig v Boudrot, 40 F Supp 2d at 500; Ball v Bonnano, 1999 WL 1337173, 1999 NY Mise LEXIS 638 [Sup Ct, Kings County, Oct. 25, 1999, index No. 32969/99].) The fact that the constitutional requirement in question applied to a union election does not in itself suggest that judicial vigilance is unwarranted. (Craig v Boudrot, 40 F Supp 2d at 500; Ball v Bonnano, 1999 WL 1337173, 1999 NY Misc LEXIS 638; see Felton v Ullman, 629 F Supp at 252.)
A. The District Council 37 Constitution’s Terms
The plain terms of the District Council 37 constitution, article XIII, § 7, dictate that “[u]nless otherwise provided for in applicable law, no person who has been convicted of. . . any crime of dishonesty . . . shall serve as an officer or managerial employee of the council.” (Fathi aff, exhibit A at 19 [emphasis added].) That text is unmistakable, leaving little room for interpretation. (Commer v McEntee, 145 F Supp 2d at 341.) Only two phrases are susceptible of any interpretation: what offenses constitute a “crime of dishonesty” and what laws constitute other applicable provisions that a person convicted of a crime of dishonesty may serve as a union officer. The court must defer to any reasonable interpretation of these constitutional terms by union officials. (E.g. White v White Rose Food, 237 F3d at 182 n 10; Commer v McEntee, 145 F Supp 2d at 340; Association of Contr. Plumbers of City of N.Y., Inc. v Local Union No. 2 United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO, 676 F Supp 523, 530 [SD NY 1988]; Felton v Ullman, 629 F Supp at 255.)
The District Council 37 constitution does not itself define a “crime of dishonesty.” Insofar as these terms are thus left for *888 interpretation, however, neither the AFSCME judicial panel nor its hearing officer’s conclusions with which the panel concurred ever interpreted a “crime of dishonesty” or interpreted Fathi’s convictions as outside that category. While the judicial panel found Fathi’s convictions “old,” “relatively minor,” and with “no direct relationship to the duties and responsibilities of his position with the union,” and the hearing officer used similar descriptions, neither official body determined that the convictions did not involve dishonesty. (Fathi aff, exhibit J at 4.)
In fact the term “crime of dishonesty” is defined under the Penal Law, under which Fathi was convicted. Definition of this term is thus not an interpretation of the union constitution, but an interpretation of state statutes defining specific offenses, including possession of stolen property and attempted petit larceny under Penal Law §§ 110.00,155.25, and 165.40, of which Fathi was convicted, so as to categorize them as crimes of dishonesty. (E.g. People v Moody, 229 AD2d 936, 937 [4th Dept 1996]; People v Hunter, 180 AD2d 752 [2d Dept 1992]; People v Young, 178 AD2d 571, 572 [2d Dept 1991]; People v Tillman, 122 AD2d 534, 535 [4th Dept 1986].) The very definition of attempted petit larceny, for example, attempting to obtain or withhold property from its owner with intent to deprive another person of property or appropriate another person’s property, represents dishonest conduct. (Penal Law § 155.05.)
In sum, even though the judicial panel characterizes its determination as avoiding “a strict construction of the union Constitution,” the determination never specifies which constitutional terms it is construing or what construction of which terms the court must defer to. The court may be inserting its judgment by concluding, consistent with the Penal Law, that Fathi was convicted of a crime of dishonesty, but would not be second-guessing union officials’ contrary judgment, let alone their interpretation of any constitutional terms, or substituting the court’s judgment for their judgment or interpretation.
Insofar as union officials may have interpreted the prohibition against serving in union office with a conviction for a crime of dishonesty as not “imposing a lifetime ban” (Fathi aff, exhibit J at 4), the court may not blindly follow union officials’ interpretations of their internal governing constitutions contrary to the documents’ explicit literal terms. (Sim v New York Mailers’ Union No. 6, 166 F3d at 470; Craig v Boudrot, 40 F Supp 2d at 500-501; Ball v Bonnano, 1999 WL 1337173, 1999 NY Misc LEXIS 638; see Hughes v Bricklayers & Allied Craft- *889 workers Local No. 45, 386 F3d at 106; Commer v McEntee, 145 F Supp 2d at 340-341.) While the court would defer to a reasonable interpretation by union officials if the dictates of District Council 37 constitution, article XIII, § 7, were ambiguous, the only terms of section 7 to be interpreted, as discussed, are (1) “crime of dishonesty” and (2) “applicable law” that would qualify section 7’s dictates. (See Felton v Ullman, 629 F Supp at 255.) Nothing in the District 37 or AFSCME constitutions suggests that a person convicted of a crime of dishonesty that is a misdemeanor rather than a felony, remote in time, “minor,” not directly related to the duties and responsibilities of the person’s union position, unlikely to be committed against the union, or all of the foregoing may serve in the position. Nothing in either union constitution suggests that a person convicted of a crime of dishonesty may serve as a union officer when it would be unfair or inconsistent with trade union principles to ban the person from serving. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 106; White v White Rose Food, 237 F3d at 182-183; Commer v McEntee, 145 F Supp 2d at 341; see Mason Tenders Local Union 59 v Laborers’ Intl. Union of N. Am., 924 F Supp at 546.) Respondents do not contend otherwise.
Consequently, even if it might be illogical to impose “a lifetime ban” (Fathi aff, exhibit J at 4), the only construction consistent with and supportable under the plain terms of District Council 37 constitution, article XIII, § 7, is that a person “convicted of . . . any crime of dishonesty,” at any time in the past, may not hold union office. (See Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 105; Commer v McEntee, 145 F Supp 2d at 340-341.) These terms in fact suggest that no crime of dishonesty is “minor,” that a record of any crime in this category poses a risk to the duties and responsibilities of union office, and that the length of the ban on holding office is immaterial. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 107.)
Local 375 members must be barred from union office according to their union’s unequivocal constitutional requirements. (Mason Tenders Local Union 59 v Laborers’ Intl. Union of N. Am., 924 F Supp at 546.) No authority, constitutional or otherwise, supports the contrary actions by union officials. (Ball v Bonnano, 1999 WL 1337173, 1999 NY Misc LEXIS 638; see Association of Contr. Plumbers of City of N.Y., Inc. v Local Union No. 2 United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, 676 F Supp at 529-530; Felton v Ullman, 629 F Supp at 255.)
*890 B, Principles and Purposes of Union Constitutional Construction
Union officials may use principles of fairness and trade unionism to interpret the union constitutions, to be sure, but those interpretive principles are to be applied to the constitutional terms that require interpretation. Here, respondents fail to articulate what constitutional terms union officials interpreted in light of fairness and trade union principles. At best, union officials devised a rule they considered the fairest and most consistent with trade unionism. That goal may be desirable, in fact laudable, but it must be achieved by a constitutional amendment, not interpretation.
Union officials also may use long-standing accepted union practice to interpret the union constitutions. Respondents fail not only to articulate any constitutional terms that union officials interpreted, but also to articulate any past instances when persons convicted of crimes of dishonesty held union office. (Hughes v Bricklayers & Allied Craftworkers Local No. 45, 386 F3d at 106; Felton v Ullman, 629 F Supp at 254.) Respondents point to no past instance within Local 375, nor local union constituent of District Council 37 besides Local 375, nor provision in AFSCME’s constitution, permitting persons convicted of a crime of dishonesty to hold union office under any circumstances. (Association of Contr. Plumbers of City of N.Y., Inc. v Local Union No. 2 United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Indus, of U.S. & Canada, 676 F Supp at 531; Felton v Ullman, 629 F Supp at 255-256.) Nor does the record indicate that Local 375 members voted to elect Fathi with awareness of his criminal record or with the understanding they were making an exception to union constitutional requirements (Felton v Ullman, 629 F Supp at 256) or that the union officials’ conclusion served the purpose of preserving union unity. (Association of Contr. Plumbers of City of N.Y., Inc. v Local Union No. 2 United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, 676 F Supp at 534.)
The hearing officer whose conclusions the AFSCME judicial panel concurred with did articulate a purpose behind the prohibition against serving in union office with a conviction for a crime of dishonesty: “to prevent persons likely to commit such offenses against the union from holding union office.” (Fathi aff, exhibit I at 7.) The explicit terms of District Council 37 constitution, article XIII, § 7, however, are consistent with this *891 purpose. Crimes of dishonesty, particularly crimes involving theft committed by a mature adult, even if not recent, undeniably bear a rational connection to the duties of a union office entrusted with an annual budget of more than $4,000,000 and a treasury of up to $1,000,000 in assets, a position from which such crimes easily may be committed against the union. Prohibiting persons with a conviction for a crime of dishonesty, here repeated convictions involving theft, from serving in union office undeniably prevents persons from holding a union office where they are in a position to commit such offenses against the union.
AFSCME’s constitution, by which Local 375 also is governed, articulates a further, albeit obvious, purpose when construing the parent union’s constitution: “to fully protect the fundamental rights of members.” (AFSCME const, art XII, § 13; Fathi aff, exhibit B at 134; see Mason Tenders Local Union 59 v Laborers’ Intl. Union of N. Am., 924 F Supp at 544-545.) Preventing persons convicted of a crime of dishonesty from holding a union office where they are in a position to commit such offenses against the union is also entirely consistent with protecting all members from offenses against their collective union property or their individual property or person. (Felton v Ullman, 629 F Supp at 254.)
In District Council 37 constitution, article XIII, § 7, the only other phrase susceptible of any interpretation is what other applicable law provides that a person convicted of a crime of dishonesty may serve as a union officer. Consequently, the only vehicle through which the union constitutions conceivably would permit Fathi to serve as Local 375’s president is Correction Law § 752, if it applies to his office. Respondents do not contend that any other applicable law permits his service as president.
III. Application of Correction Law § 752
Correction Law § 752 begins with its prohibition of discrimination against persons with a criminal record who apply for employment. If Correction Law § 752 pertains to Fathi’s paid service as union president, section 753 (1) (b) allows the employer to consider “[t]he specific duties and responsibilities . . . related to the . . . employment sought or held.” A “[close] relationship between one or more of the previous criminal offenses and the specific . . . employment sought or held” by an applicant for employment or an employee exempts the employer from section 752’s anti-discrimination provision. (Correction *892 Law § 752 [1].) The statutes thus permit the employer to consider specified factors to justify denying employment to an employment applicant or an employee. The statutes do not limit the employer in considering any factors to justify accepting an employee.
“Private employer” subject to Correction Law §§ 752 and 753 includes “any . . . labor organization . . . which employs ten or more persons.” (Correction Law § 750 [2].) “Employment” within the statutes’ scope includes “any occupation, vocation or employment.” (Id. § 750 [5].)
Thus, if Correction Law § 752 applies, it does not raise any issue as to the factors respondents considered in permitting Fathi’s service as president: that his misdemeanor convictions are too long ago, too minor, and too unrelated to his union duties to ban his service and that fairness and trade union principles instead dictate his service. Further issues may remain, of course, as to whether the factual record supports respondents’ findings regarding those factors. (CPLR 7803 [3], [4].)
The statutory scheme itself specifies the circumstances under which Correction Law § 752 applies: “any application by any person for a license or employment at any public or private employer.” (Correction Law § 751 [emphasis added].) Thus, while Correction Law § 752 certainly permits employment of a person who has been convicted of a crime of dishonesty and extends so far as to prohibit denying employment to a person convicted of a crime of dishonesty except when specified considerations pertain, Fathi did not apply for union employment. Nor do respondents contend that he applied for union employment. Instead, he ran for election to union office. Therefore, even though the union may have paid wages to him for his service in the office to which he was elected, his election, rather than application, places him outside Correction Law § 752’s scope.
IV Petitioners’ Nonjoinder of District Council 37 and AFSCME
Although this proceeding seeks a determination contrary to the District Council 37 ethical practices officer’s intermediate determination and the AFSCME judicial panel’s final determination of petitioners’ internal union appeal, the amended petition, as respondents acknowledge, does not actually request relief against District Council 37 or AFSCME or any of their officials. Instead, the amended petition requests an injunction against each of the currently named respondents: against Fathi *893 holding a position as a Local 375 officer, against Thomas according Fathi the status of a Local 375 officer and allowing him to attend or vote at its executive committee meetings, and against Constantine paying Fathi as a Local 375 officer. Therefore no other respondents are necessary to accord petitioners complete relief. (CPLR 1001 [a]; Matter of TransGas Energy Sys., LLC v New York State Bd. on Elec. Generation Siting & Envt., 65 AD3d 1247, 1250 [2d Dept 2009]; Spector v Toys “R” Us, Inc., 12 AD3d 358, 359 [2d Dept 2004].)
Insisting nonetheless that such relief will produce an inequitable effect on District Council 37 and AFSCME, respondents fail to demonstrate what inequity will occur or how. (CPLR 1001 [a]; Eclair Advisor Ltd. v Jindo Am., Inc., 39 AD3d 240, 245-246 [1st Dept 2007]; Halliwell v Gordon, 61 AD3d 932, 935 [2d Dept 2009]; Grasso v Schenectady County Pub. Lib., 30 AD3d 814, 818 [3d Dept 2006]; Spector v Toys “R” Us, Inc., 12 AD3d at 359.) Petitioners seek only that respondents comply with the District Council 37 constitution’s plain terms. Insofar as this relief may contradict, reverse, or vacate the District Council 37 ethical practices officer’s intermediate determination and the AFSCME judicial panel’s final determination of petitioners’ internal union appeal, the participation of District Council 37 and AFSCME is unnecessary to effectuate that result. The AFSCME judicial panel did not order respondents to take the actions petitioners seek to enjoin, such that respondents would be subject to conflicting orders unless the relief included an injunction against implementation of the judicial panel’s order. (Matter of Master v Davis, 65 AD3d 646, 647 [2d Dept 2009]; Mayer’s Cider Mill, Inc. v Preferred Mut. Ins. Co., 63 AD3d 1522, 1523-1524 [4th Dept 2009]; Matter of Fisher v Sampson, 27 AD3d 560, 561 [2d Dept 2006]; Matter of O’Brien v Seneca County Bd. of Elections, 22 AD3d 1036, 1037 [4th Dept 2005].) Here, no action by any parties other than the current respondents Fathi, Thomas, and Constantine as set forth above would be required.
V Conclusion
The court’s province in this internal union election dispute is confined to deciding whether respondents acted in conformity with their union constitution and Correction Law § 752. (Association of Contr. Plumbers of City of N.Y., Inc. v Local Union No. 2 United Assn. of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, 676 F Supp at 536.) Focusing simply on the constitutional and statutory provisions, *894 uninfluenced by extraneous considerations, demonstrates that (1) respondents’ acceptance of Fathi’s election as their union president contravenes the plain, unmistakable terms of District Council 37 constitution, article XIII, § 7, and (2) Correction Law § 752 does not apply to dictate otherwise. (CPLR 7803 [3]; Commer v McEntee, 145 F Supp 2d at 338; Craig v Boudrot, 40 F Supp 2d at 500; Mason Tenders Local Union 59 v Laborers’ Intl. Union of N. Am., 924 F Supp at 548.) Petitioners are entitled to enforce that constitutional provision. Therefore the court denies respondents’ motion to dismiss the amended petition and grants the amended petition to this extent and as follows. (CPLR 3211 [a] [7], [10]; 7803 [3]; 7806.)
The court enjoins respondent Fathi from holding a position as a Local 375 officer, respondent Thomas from according Fathi the status of a Local 375 officer and allowing him to attend or vote at its executive committee meetings, and respondent Constantine from paying Fathi as a Local 375 officer. This decision constitutes the court’s order and judgment granting the amended petition as specified. (CPLR 7806.)